**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel James FOWLIE, Defendant–Appellant.**

No. 91–50383.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1993.

Decided May 2, 1994.

---

William J. Kopeny, James D. Riddet, and Cherif Bassiouni, Santa Ana, CA, for defendant-appellant.

Patrick W. McLaughlin and Jonathan S. Shapiro, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.

Opinion by Judge REINHARDT.

REINHARDT, Circuit Judge:

In this appeal we consider Daniel James Fowlie's challenges to the lawfulness of his extradition, the propriety of certain proceedings before the grand jury, the rejection of his motion to suppress evidence, the exclusion of certain evidence he sought to introduce at trial, the denial of his motion for a continuance, and the sentence imposed by the district court. In light of the government's concession that the district court erred in sentencing Fowlie for both a continuing criminal enterprise and a lesser-included offense, we vacate Fowlie's conviction on count 2, conspiracy to possess marijuana with intent to distribute. Because we find that Fowlie's other claims lack merit, we affirm his convictions on counts 1, 12–14, and 20.[1]

## I. Factual Background and Proceedings

Between 1981 and 1986 appellant Fowlie built and oversaw an organization that delivered tons of Mexican marijuana throughout the United States and Canada. Fowlie's organization was dealt a serious blow in March 1985 when Orange County (California) Sheriff's Department officers executed a search warrant at his California ranch and seized certain property. The officers seized rolls of plastic packaging material, a heat sealing machine, a money counter, a counterfeit bill detector, a device used to determine whether an individual is wearing a transmitter, two bullet proof vests, and an Uzi firearm with flash suppressor and clip. They also found marijuana residue in television-boxes and in a vacuum cleaner.

On November 30, 1988, a grand jury returned a 26-count indictment charging Fowlie with operating a continuing criminal enterprise (21 U.S.C. § 848); conspiracy to possess marijuana with intent to distribute (21 U.S.C. § 846); 17 counts of possession and distribution of marijuana (21 U.S.C. § 841(a)(1)); conspiracy to defraud the United States by impeding the IRS and to avoid currency reporting requirements (18 U.S.C. § 371); and five counts of failing to report currency transportation (31 U.S.C. §§ 5316 & 5322(a)(b)). Fowlie was extradited from Rosarita Beach, Mexico, in July 1990, and trial commenced in March 1991. Many of the trial witnesses against Fowlie were former members of his drug ring who testified in exchange for governmental favors. Twenty counts of the indictment were submitted to the jury and it returned guilty verdicts on fifteen. In June 1991, Fowlie was sentenced to several consecutive and concurrent terms of imprisonment for a total of 30 years, and fined $1 million. He filed a timely notice of appeal.

## II. The Extradition Challenge

 Fowlie argues that under the doctrine of specialty the district court lacked jurisdiction over all counts of the indictment other than those pertaining to possession of narcotics with intent to distribute (counts 3–19). The specialty doctrine prevents the re-

---

1. Fowlie also contends that the statute of limitations barred the government from prosecuting him for crimes committed more than five years before the date of the indictment, so that his convictions on counts 4–7, 9, 21, 22, 25 and 26 should be reversed. Since the resolution of this issue does not affect his sentence, we will decide it subsequently in a separate opinion. The facts that are relevant to that issue will be described at that time.

questing nation from prosecuting an extradited individual for crimes other than those as to which the rendering state explicitly granted extradition. *United States v. Khan,* 993 F.2d 1368, 1373–74 (9th Cir.1993). Because the doctrine is based upon international comity, the extradited party may be tried for a crime other than that for which he was surrendered if the rendering country consents. *United States v. Van Cauwenberghe,* 827 F.2d 424, 428 (9th Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). In the absence of consent, an extradited person may raise whatever objections to his extradition the rendering country might have made. *United States v. Cuevas,* 847 F.2d 1417, 1426 (9th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). At oral argument the government conceded that Fowlie has standing to object to his extradition on the grounds of a violation of the specialty principle. The district court conducted a lengthy hearing under Fed.R.Crim.P. 26.1, featuring expert testimony on Mexican judicial proceedings and rejected Fowlie's claim on the merits. We review the district judge's analysis of foreign law *de novo. Khan,* 993 F.2d at 1372.

■ The right to demand and obtain extradition is created by treaty. *Id.* at 429. Rather than kidnapping Fowlie as it might have done, *see United States v. Alvarez–Machain,* —— U.S. ——, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992), the United States requested his extradition under its treaty with Mexico.[2] It did so prior to obtaining an indictment. The Mexican government was provided with a declaration by an Assistant United States Attorney, the sworn statements of several witness, and two criminal complaints with contemporaneously issued arrest warrants. The first complaint charged Fowlie with a single count of violating 21 U.S.C. section 841(a)(1); the second complaint contained a total of 48 counts, including all those eventually set forth in the indictment. A Mexican district court rejected Fowlie's challenges to extradition and the Secretary for Foreign Affairs explicitly ordered him to be extradited on charges of

possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, conspiracy to possess marijuana, conspiracy to defraud the United States and continuing criminal enterprise. In these respects the extradition order was unambiguous.

Fowlie then challenged the decision of the Mexican district court in an *amparo* proceeding. "*Amparo*" is Spanish for "protection." Although the *amparo* is a highly complex legal institution, as Fowlie's expert witness on Mexican law testified, it is somewhat similar to *habeas corpus* and, *inter alia,* is the means to review and annul unconstitutional judicial decisions. *See generally* Richard D. Baker, *Judicial Review in Mexico: A Study in the Amparo Suit* (1971); Hector Fix Zamudio, *A Brief Introduction to the Mexican Writ of Amparo,* 9 Cal.W.Int'l.L.J. 306 (1979); Robert S. Baker, *Constitutionalism in the Americas: A Bicentennial Perspective,* 49 U.Pitt.L.Rev. 891, 906–07 (1988). An *amparo* court rejected Fowlie's claims of constitutional error, as did an appellate *amparo* court.

Nevertheless, Fowlie argues that the appellate *amparo* court implicitly limited his extradition to the possessory offenses. Fowlie relies on one sentence in the court's opinion: "In other words, in order to proceed on to the extradition thus requested there is no requirement that the offenses exist exactly in the legislation of both countries, but rather only one or several of them need be satisfied, as occurred in this case." This sentence follows a citation to 21 U.S.C. section 841(a)(1) as part of a discussion of whether the currency charges on which Fowlie was later indicted had counterparts under Mexican law. The government responds that 1) Fowlie misunderstands the nature of *amparo* review and 2) in any event the appellate *amparo* court did not modify the decisions of the district court and the lower *amparo* court, which permitted extradition on all of the offenses eventually charged in the indictment.

We agree that Fowlie misapprehends the significance of the appellate *amparo* decision

---

2. Extradition Treaty Between the United States and Mexico. 31 U.S.T. 5059, T.I.A.S. 9656.

and that the language he relies upon does not function as a limitation on the crimes described in the extradition order. Like *habeas corpus*, the *amparo* has a more limited scope than an appeal and determines whether the contested act violated a petitioner's *constitutional* rights. In other words, the *amparo* decisions had no bearing upon Fowlie's rights under the United States–Mexican extradition treaty, which were finally determined by the Mexican district court. The only question before the *amparo* tribunals was whether Fowlie's extradition was constitutional under Mexican law. They found that it was.

Moreover, the sentence that Fowlie highlights, when read in the context of the entire opinion of the *amparo* appellate court, simply does not restrict the scope of his extradition. It is the last sentence in an 18–page opinion that discusses and rejects as "groundless" Fowlie's challenges to his extradition on all charges. Fowlie's *amparo* appeal did not argue at any point that his extradition on possession of narcotics would alone be proper. Under the principle of *stricti juris*, an *amparo* court will look only to a plaintiff's specific complaints of constitutional violations. Baker, *Judicial Review* at 185–86. Therefore, the *amparo* appellate court would not have limited the grounds for Fowlie's extradition *sua sponte*. While the precise meaning of the sentence relied upon by Fowlie is not clear, our reading of the appellate court's decision as a whole convinces us that it did not, explicitly or implicitly, limit Fowlie's extradition to the possession charges.

Accordingly, the district court correctly concluded that it had jurisdiction over all counts of the indictment.

### III. *Improper Appearance Before the Grand Jury*

Fowlie next argues that the district court erred in denying his motion to dismiss on the ground that Special Assistant United States Attorney Sanford Feldman was unauthorized to represent the government in criminal proceedings due to a technically ineffective appointment. The government concedes that Feldman's presence before the grand jury constituted a violation of Fed.R.Crim.P. 6(d)[3] but argues that it was harmless. In response to Fowlie's motion and request for discovery regarding Feldman's role in the instant case, the district court ordered the government to provide it with copies of the grand jury transcripts. After an *in camera* review of the transcripts, the court determined that Feldman's appearance did not prejudice the defendant and denied disclosure. Fowlie contends that the district court abused its discretion in doing so. *United States v. Fischbach & Moore, Inc.*, 776 F.2d 839, 842 (9th Cir.1985).[4]

■ Federal Rule of Criminal Procedure 6(e)(3)(C)(ii) is an exception to the general policy against unsealing grand jury transcripts.[5] It permits disclosure upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. Therefore,

---

3. That rule provides that "[a]ttorneys for the government, the witness under examination, interpreters when needed and ... a stenographer or operator of a recording device may be present while the grand jury is in session...." Fed. R.Crim.P. 54(c) provides that "'Attorney for the government' means the Attorney General, a United States Attorney, [or] an authorized assistant of a United States Attorney...."

4. Fowlie requests that we unseal the transcripts of grand jury proceedings in which Feldman participated and allow him to file a supplemental brief on whether any prejudice resulted from it. For the reasons set forth below, this motion is denied.

5. The reasons for the policy include the following:

(1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from expense of standing trial where there was no probability of guilt. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (internal quotation committed).

the propriety of the district judge's decision to deny disclosure and instead conduct an *ex parte* examination of the transcripts depends in part upon whether there is reason to believe grounds for dismissal exist in this case. Dismissal is appropriate for a violation of Fed.R.Crim.P. 6(d) only if the violation substantially influenced the grand jury's decision to indict. *United States v. Plesinski,* 912 F.2d 1033, 1038 (9th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).

*Plesinski* also involved Special Assistant United States Attorney Feldman and was in fact a case related to the instant one. However, while Feldman merely observed the grand jury proceedings at issue in *Plesinski,* 912 F.2d at 1038 & n. 9, in this case he admittedly participated in the questioning of witnesses and appeared before the grand jury by himself on one occasion. On the other hand, Feldman has submitted a sworn and uncontested affidavit wherein he states that at all times he appeared before the grand jury he was acting under the supervision of properly authorized Assistant United States Attorneys.

 We have examined the transcripts of the grand jury proceeding *in camera.* Like the district court, we conclude that Feldman's participation was harmless. His role was minimal, and it is clear to us beyond any doubt that neither the words he uttered nor the responses to them influenced the grand jury's decision to indict. Therefore, the district court did not abuse its discretion in denying both the motion to disclose and the motion to dismiss. However, we note that in other cases involving alleged grand jury errors it may be advisable for the district court to order disclosure and allow defense attorneys to brief the issue of prejudice. What appears to be harmless to a district judge may be prejudicial if seen in light of a defense counsel's special familiarity with a given prosecution. As an alternative to actual disclosure, a district court may choose to allow defense counsel to participate in an *in camera* hearing so that any question of prejudice will be subject to adversarial presentation. *See United States v. Spires,* 3 F.3d 1234, 1238–39 (9th Cir.1993). While the district judge could have opted to follow one of these procedures here, under the circumstances of this case we find no abuse of discretion in her failure to do so.

## IV. Suppression Issues

 Fowlie challenges on two related grounds the denial of his motion to suppress incriminating evidence seized from his ranch. First, he argues that under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the district court should have provided him with an evidentiary hearing in which he could have shown that there were deliberately or recklessly false statements in the affidavit that supported the warrant upon which the search of his ranch was based. In the alternative, he contends that the district court erred in concluding that under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the officers could in objective good faith rely on the warrant, which the government admits was not supported by probable cause. We review these decisions by the district court *de novo.* *United States v. Homick,* 964 F.2d 899, 904 (9th Cir.1992) (*Franks* hearing); *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1282 (9th Cir.1992) (good faith).

### A. Franks Hearing

 A defendant is entitled to a *Franks* hearing when he makes a substantial preliminary showing that a false statement was (1) deliberately or recklessly included in an affidavit submitted in support of a search warrant; and (2) material to the magistrate's finding of probable cause. *United States v. Motz,* 936 F.2d 1021, 1023 (9th Cir.1991); *see also United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1387 (9th Cir.1991) (setting out five factors relevant to assessing defendant's entitlement to *Franks* hearing). When challenging a warrant affidavit pursuant to *Franks,* the defendant must not only specify which portions are false, but must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily explain the absence of such supporting documentation. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. Here, the only representation contained in the warrant affidavit that Fowlie

specifically attempted to controvert before the district court was the statement that Westmoreland, Fowlie's ranch foreman, was suspected of being a multi-kilogram cocaine distributor. Also included in the warrant affidavit, however, was a detailed description of the 50 pounds of marijuana, ledgers tending to show large scale sales of controlled substances, $73,000 in currency, and firearms found in the search of Westmoreland's Laguna Beach home the day before the warrant was issued. Whether Westmoreland was suspected of being a multi-kilogram cocaine distributor or simply a multi-kilogram marijuana distributor is immaterial to a finding of probable cause. Accordingly, a *Franks* hearing was not required in this case.

### B. *Good Faith*

■ Because the government concedes that there was no probable cause to search Fowlie's ranch, we must determine whether the officers could nevertheless rely in good faith on the warrant issued by the magistrate. An officer does not manifest objective good faith in relying on a warrant based on an affidavit that is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420–21. Our inquiry " 'is whether the affidavit was sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.' " *United States v. Hove,* 848 F.2d 137, 139 (9th Cir.1988) (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420–21). If so, Fowlie's challenge must fail.

■ The search warrant for Fowlie's house was obtained after the house of his ranch foreman, Westmoreland, had been searched. Fifty pounds of marijuana, $75,000 in currency and ledger books were discovered there along with firearms. Photos of Fowlie's ranch and keys to it were also found. A search warrant for Fowlie's ranch was sought based on a 13–page affidavit which included a description of the seizure of the above items at the foreman's house as well as statements that connected him with Fowlie's house and Fowlie with the drug trade.[6] The affiant also provided his reasons for wanting to search Fowlie's ranch:

> [P]ersons who traffic in large quantities of controlled substances, commonly maintain or have access to, other residences or structures, called safe houses, to store or warehouse additional large quantities of controlled substances, for security purposes and to avoid law enforcement detection or seizure ... The construction receipts, keys, documents, and photographs indicate a clear connection between the residence in South Laguna where these items were seized and the suspects Westmorland [sic] and Gray were arrested and the Rancho Del Rio residences. This connection is confirmed by the evidence indicating close association between Westmorland and Fowlie and the connection of both with these residences. The large amount of cash and drugs found in the South Laguna residence occupied by Westmorland indicate a large scale drug distribution which requires a "safe house" where drugs can be safely stored. Fowlies [sic] past narcotics trafficking history combined with Westmorlands [sic] obvious drug trafficking clearly indicates that there is probable cause to believe the Rancho Del Rio residences in fact constitutes this "safe house."

We conclude that the affidavit was not so deficient as to fail the good faith standard. A comparison with the affidavit found lacking in *Hove* is instructive. That affidavit merely listed the address of the residence without including any rationale for the search or giving any facts in support of a conclusion that evidence or contraband would probably be found there. 848 F.2d at 140. In the instant case, the affidavit is much more extensive than that in *Hove* and presents a reasonable showing of probable cause. The affidavit contained the affiant's plausible theory that the property was used as a "safe house" for drug distribution. The affidavit also included a description of physical evidence connecting Westmoreland, who was found with large quantities of marijuana and money, to the ranch property. Although the affidavit consisted largely of conclusory opinion, we believe it is sufficient, if just barely,

---

**6.** Fowlie alleges that the last piece of information was untrue.

to meet the minimal requirements of the good faith exception.

## V. *Trial Issues*

Fowlie claims that the district court erroneously excluded a videotape of a defense investigator's interview with Robert Pellegrom, a witness against Fowlie before the grand jury.[7] During the interview, which was conducted in Holland, Pellegrom stated that government agents induced him to give false testimony against Fowlie in exchange for favorable treatment. Fowlie asserts that had the tape been introduced he would have been able to persuade the jury that the other witnesses who testified against him were either pressured to testify, testified falsely, or were of questionable reliability in light of pressure from the government. He also contends that in light of its exclusion of the videotape, the district court erred in denying his mid-trial motion for a continuance to take Pellegrom's deposition.

### A. *Admission of the Tape*

■ Fowlie contends that the excluded videotape evidence falls within the statements against interest and catch-all exceptions to the hearsay rule. Whether the district court correctly construed the hearsay rule is a question of law reviewable *de novo*. *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir.1988), *cert. denied*, 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). We review other aspects of decisions regarding the exclusion of hearsay evidence for an abuse of discretion. *United States v. Bland*, 961 F.2d 123, 126 (9th Cir.), *cert. denied*, —

U.S. ——, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992).

■ Two requirements must be met under Fed.R.Evid. 804(b)(3) for the admission of hearsay as a declaration against interest:[8] (1) the declarant must be unavailable;[9] and (2) the statement must tend to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true. *United States v. Magana–Olvera*, 917 F.2d 401, 407 (9th Cir. 1990).[10] The "against interest" requirement can be satisfied not only by confessions of criminal responsibility, but also by remarks that "tend to subject" the declarant to criminal liability. *Id.* at 407. Fowlie contends that Pellegrom's videotape interview meets this latter standard because Pellegrom all but admitted to having committed perjury during his grand jury testimony. However, during his interview Pellegrom indicated that he would never come back to the United States under any circumstances, and stated that he was aware that he could not be extradited. A person who does not intend ever to be physically present in the United States again would reasonably believe that he was under little or no threat of criminal liability when he made the statements that Fowlie sought to introduce. For this reason, we conclude that the hearsay statements were not sufficiently against Pellegrom's interest to guarantee their reliability and the district court did not abuse its discretion in deciding that they were not admissible under Fed.R.Evid. 804(b)(3).

---

7. Fowlie has made a motion here, unopposed by the government, to include the transcript of the interview in the record. We grant this motion. The government has moved to strike an unauthorized supplemental brief that Fowlie filed on this issue as part of an otherwise permissible letter bringing additional authority to the attention of the court. That motion is also granted.

8. A statement against interest is: "A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest; or so far tended to subject the declarant to civil or criminal liability ..., that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed.R.Evid. 804(b)(3).

9. At oral argument the government conceded Pellegrom was unavailable.

10. A statement tending to expose the declarant to criminal liability that is offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. *Id.* at 407, n. 5. We need not decide whether that requirement is applicable to Pellegrom's statements regarding governmental misconduct because as explained *infra* they do not meet the against interest requirement.

Nor, for much the same reasons, did the district court err in refusing to admit Pellegrom's statements under the catchall exception to the hearsay rule. Hearsay evidence sought to be admitted under that exception must have circumstantial guarantees of trustworthiness equivalent to the listed exceptions to the hearsay rule. *Guam v. Ibanez*, 880 F.2d 108, 113 n. 5 (9th Cir.1989), *cert. denied*, 496 U.S. 930, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). None were present here. In addition, a district court must find that (a) the offered statement is evidence of a material fact; (b) it is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (c) the general purposes of these rules and the interests of justice will best be served by admission of the proffered statement into evidence. Fed. R.Evid. 804(b)(5). The Pellegrom videotape fails at least the third requirement. The hearsay rules and their exceptions are designed to admit only testimony with some earmarks of reliability. For the reasons stated earlier, the videotape was made under circumstances that make it wholly unreliable.

We reject Fowlie's analogy between this case and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). There, antiquated rules of evidence precluded the admission of the declarant's confession and other admissions of guilt as to the capital offense for which the defendant was on trial. The Supreme Court reversed, reasoning that where constitutional rights are directly implicated the hearsay rule must not be applied mechanistically to defeat the ends of justice. Here, the exclusion of the videotape worked no violation of Fowlie's due process rights nor was it otherwise contrary to the interests of justice. In *Chambers*, the testimony rejected by the trial court bore persuasive assurances of trustworthiness and thus was well within the basic rationale for the exceptions to the hearsay rule. 410 U.S. at 300–03, 93 S.Ct. at 1048–50. Here, the

evidence lacks any significant indicia of reliability. Moreover, in *Chambers* the excluded hearsay evidence was directly exculpatory because it consisted of someone else's admissions of guilt. In this case, the hearsay evidence was tangential at best and concerned one isolated instance of prosecutorial misconduct. Its connection to Fowlie's innocence is far more attenuated than the evidence at issue in *Chambers*. For these reasons, *Chambers* is distinguishable and the district court did not abuse its discretion in excluding the videotape as unreliable hearsay. *See United States v. Rubio–Topete*, 999 F.2d 1334, 1339–40 (9th Cir.1993) (rejecting similar analogy to *Chambers*).

**B. Motion for Continuance**

Fowlie argues that once the videotape evidence was rejected, the district court was required to grant his motion for a continuance to take Pellegrom's deposition. Even assuming that Fowlie made such a motion, which is quite doubtful,[11] we find no abuse of discretion in its denial. *United States v. Robinson*, 967 F.2d 287, 291 (9th Cir.1992). Moreover, we reject Fowlie's contention that the district court's decision deprived him of his Sixth Amendment rights to compulsory process and effective assistance of counsel.

In deciding whether to grant a continuance a district court must balance 1) whether the continuance would inconvenience the witnesses, the court, counsel, or the parties; 2) whether other continuances have been granted; 3) whether legitimate reasons exist for the delay; 4) whether the delay is the defendant's fault; and 5) whether a denial would prejudice the defendant. *Id.* A number of factors supported the granting of a continuance in this case. Fowlie sought evidence that raised questions as to the credibility of government witnesses. Because the government had rested by the time of the request, the inconvenience to the government would have been slight. Moreover, Pelle-

---

11. The following transpired between Fowlie's attorney and the district judge:

Attorney: So for all those reasons, your Honor, I think the witness is unavailable; it's too late to take his deposition now ... He may or may not give a deposition, we don't know, but if I

made the motion right now and asked to recess this trial for three or four weeks to take a deposition and to Holland, I don't think your Honor would be receptive to that proposal.
The Court: You win on that one.
Mr. Riddet: And I'm not making it.

grom was on the government's witness list and it was not revealed until the last minute that he would not testify.

However, a number of factors weighed against granting the continuance. When discussing the possibility of a continuance, the defense stated that it would take three to four weeks to depose Pellegrom. Such a long continuance in the middle of the trial would have inconvenienced the court, the witnesses, and the jury. Moreover, Fowlie's trial attorney admitted that he was not sure that Pellegrom would give a deposition and that it probably was "too late to take [it]." Given the length of the potential interruption of the proceedings and the likelihood that the continuance would be for naught, we cannot say that, in light of all the circumstances, the district court abused its discretion in denying Fowlie's motion. *Cf. United States v. Hoyos,* 573 F.2d 1111, 1114 (9th Cir.1978) (if defendant cannot show that witness can be produced at trial, it is not an abuse of discretion to deny continuance for that purpose).

 Fowlie analogizes this case to *Washington v. Texas,* 388 U.S. 14, 20, 87 S.Ct. 1920, 1923–24, 18 L.Ed.2d 1019 (1967), in which the Supreme Court held unconstitutional a state rule that prohibited a defendant from calling his co-principals or accomplices as witnesses. However, Fowlie has not been arbitrarily denied his right to present witnesses. Rather, after weighing all the relevant facts the district court denied a probably futile motion for a continuance to take the deposition of a witness who was unwilling to testify in person and whose evidence would relate to events that were entirely tangential to the issues affecting Fowlie's guilt or innocence. Therefore, Fowlie's Sixth Amendment rights were not violated.

## VI. *Double Jeopardy*

Fowlie was sentenced to 30 years' imprisonment and fined $1 million on Count 1 (continuing criminal enterprise), and sentenced to 15 years on Count 2 (conspiracy to distribute marijuana). Both penalties are to run concurrently. Fowlie argues that this sentence violates the Double Jeopardy Clause of the Fifth Amendment. The government agrees and concedes that, under the

law of this circuit, if we uphold Fowlie's conviction on count 1, we must vacate his conviction on count 2. Accordingly, because we affirm Fowlie's continuing criminal enterprise conviction, we vacate the conviction for conspiracy to distribute marijuana. *See United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1582 (9th Cir.1989).

## VII. *Conclusion*

Fowlie's convictions on counts 1, 12–14, and 20 are **AFFIRMED.** His conviction on count 2 is **VACATED** and his sentence on that count, including the special assessment, is **VACATED.**

AFFIRMED IN PART; REVERSED and VACATED IN PART