# Illinois Official Reports

## Appellate Court

---

### *People v. Ulloa*, 2015 IL App (1st) 131632

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY ULLOA, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-1632 |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-01779; the Hon. Rickey Jones, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kathleen T. Zellner & Associates, P.C., of Downers Grove (Douglas H. Johnson and Frank A. Richter, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Yvette Loizon, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Justice Liu concurred in the judgment and opinion.<br>Justice Pierce specially concurred, with opinion. |

**OPINION**

¶ 1    A jury found Henry Ulloa guilty of conspiring to deliver cocaine. In this appeal, we find that the State presented sufficient evidence to sustain the conviction, but the trial court's use of an instruction which misstated the applicable law amounted to plain error. Accordingly, we reverse and remand for a new trial.

¶ 2                                    BACKGROUND

¶ 3    On December 16, 2006, Ulloa flew to Chicago, where he rented a white Dodge and a room at a hotel in Bedford Park for two nights. On December 18, 2006, Officer Thomas Cunningham of the Chicago police department, while conducting surveillance, watched as Jose Lopez left the hotel in Bedford Park, got in the white Dodge Ulloa rented, and drove off. Cunningham followed Lopez to another hotel, the Carlton, a few miles away. Lopez, who did not live near Chicago, had rented a room in the Carlton only for the night of December 17, 2006. Lopez went empty handed into a room at the Carlton and came back out carrying a black bag. Efrain Alamo came out of another room in the Carlton and joined Lopez. Lopez drove with Alamo to a restaurant on Pulaski and parked the Dodge. A green Honda parked near the white Dodge. Benigno Flores and Eduardo Chavez-Sanchez got out of the Honda and spoke with Lopez and Alamo in the restaurant's parking lot. Alamo opened the door to the Dodge. Flores took out the black bag and put it in the Honda. Lopez and Alamo drove off in the Dodge.

¶ 4    As Flores and Chavez-Sanchez got back in the Honda, police drove into the parking lot. The Honda sped off down Pulaski with police cars in pursuit. The officers saw a black bag thrown out of the Honda's window. One officer retrieved the black bag while others successfully stopped the Honda and arrested Flores and Chavez-Sanchez. The black bag held two packages, each weighing about one kilogram, and each containing some cocaine. Later that day, police officers also stopped the white Dodge. The officers arrested Lopez and Alamo and took their cell phones.

¶ 5    Cunningham returned to the hotel in Bedford Park where he found Ulloa. Ulloa told Cunningham he did not know Lopez or Alamo, and he had not rented a car. Cunningham asked whether Ulloa had much cash. Ulloa admitted that he had about $60,000 in cash in a shopping bag. Cunningham arrested Ulloa. Prosecutors charged Ulloa with conspiracy to deliver more than 900 grams of a substance containing cocaine in violation of section 405.1 of the Illinois Controlled Substances Act (Act) (720 ILCS 570/405.1 (West 2006)). Prosecutors did not charge Ulloa with any other offenses.

¶ 6    At the jury trial, Cunningham testified, over Ulloa's objection, that on January 9, 2006, 11 months before the encounter at issue, Cunningham saw Ulloa purchase a heat-sealing machine and a money counter from a store in Cicero. Cunningham testified about the surveillance that led to the arrests of Flores, Chavez-Sanchez, Lopez, and Alamo. Cunningham also recounted the discussion with Ulloa that preceded Ulloa's arrest. Cunningham said he took four cell phones from Chavez-Sanchez at the time of his arrest and two from Ulloa. In Ulloa's room, Cunningham found a box labeled "Protégé." Cunningham said the black bag thrown from the Honda bore a "Protégé" insignia. Cunningham also found a piece of paper in Ulloa's room, and the paper bore a list of names and numbers that seemed to represent dollar amounts.

¶ 7    Officer Patrick Keating testified that Lopez carried one cell phone and Alamo had two at the time of their arrest. Keating checked the phones' memories and discovered that Lopez used his phone to connect with one of Ulloa's phones around 11 a.m. on December 18, 2006. Lopez then connected with Alamo's phone. Chavez-Sanchez connected with Ulloa's phone around 12:15 p.m. that day, near the time that Flores and Chavez-Sanchez took possession of the black bag and put it in the Honda. Lopez and then Alamo both connected with Ulloa's phone a few minutes later.

¶ 8    Ulloa testified that he flew from his home in California to Chicago on December 16, 2006, to see his girlfriend. He did not see his girlfriend during the trip. He ran into Lopez at a bar on December 17, and brought Lopez back to the hotel in Bedford Park, where they stayed overnight. When Ulloa woke the next morning, both Lopez and the white Dodge Ulloa rented were gone. Lopez had left more than $65,000 in cash in the room. Ulloa tried to call Lopez but got no answer. Ulloa also tried to call Alamo because he knew Lopez sometimes visited Alamo. Ulloa admitted that he lied to Cunningham about whether he knew Lopez and Alamo and whether he rented the car.

¶ 9    The State impeached Ulloa with the transcript of his testimony from a related proceeding. According to the transcript, Ulloa said that when he called Lopez on December 18, 2006, Lopez answered the phone and told Ulloa he would return with the Dodge.

¶ 10   The trial court gave the following instructions to the jury:

"A person is legally responsible for the conduct of another person[ ] when[,] either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid[,] or attempts to aid the other person in the planning or commission of the offense.

* * *

An agreement may be implied from the conduct of the parties, although they acted separately or by different means and did not come together or enter into an expressed agreement, and a person commits the offense of possession with intent to deliver a controlled substance when he knowingly possesses with intent to deliver a substance containing a controlled substance, cocaine, and the substance containing the controlled substance weighs 900 grams or more.

A person commits the offense of delivery of a controlled substance, cocaine, when he knowingly delivers a substance containing a controlled substance, cocaine, and the substance containing the controlled substance weighed 900 grams or more.

A person commits the offense of criminal drug conspiracy when he, with intent that the offense of possession of a controlled substance, with intent to deliver and delivery of a controlled substance be committed, agrees with others to the commission of the offenses of the possession of a controlled substance with intent to deliver and delivery of a controlled substance. And an act [in] furtherance of the agreement is performed by any party to the agreement to constitute the offense of criminal drug conspiracy. And it is not necessary that the conspirators succeed in committing the offense of possession of a controlled substance with delivery and delivery of a controlled substance.

To sustain the charge of criminal drug conspiracy the State must prove the following propositions: First, that the defendant[,] or one whose conduct [he] is legally responsible for[,] agreed with Jose Angel Lopez, Effrain Sanchez Alamo, Benigno

Delgado Flores, Eduardo Chavez-Sanchez to the commission of the offenses of possession of a controlled substance with intent to deliver and delivery of a controlled substance be committed [*sic*]. And second, that the defendant did so with the intent that the offenses of possession of a controlled substance with intent to deliver and delivery of a controlled substance be committed. And third, that an act in furtherance of the agreement was performed by any party to the agreement."

¶ 11    Ulloa's attorney did not object to the accountability instruction or to the inclusion of accountability language in the issues instruction.

¶ 12    The jury found Ulloa guilty of participating in a criminal drug conspiracy to deliver cocaine. The trial court denied Ulloa's motion for a new trial and sentenced him to 20 years in prison. Ulloa now appeals.

¶ 13                                ANALYSIS

¶ 14    Ulloa argues that (1) the evidence did not prove him guilty; (2) the court erred by instructing the jury on accountability; (3) the instructions did not require the jury to find all the necessary elements of the crime charged; and (4) the court should not have permitted the State to introduce evidence that Ulloa bought a heat sealer and a money counter about a year before the transaction at issue.

¶ 15                        Sufficiency of the Evidence

¶ 16    When a defendant challenges the sufficiency of the evidence, this court must determine whether any rational trier of fact could have found that the State proved all of the elements of the crime beyond a reasonable doubt. *People v. Rivera*, 2011 IL App (2d) 091060, ¶ 24. To prove the charged offense of conspiracy to deliver more than 900 grams of a substance containing cocaine, the State needed to prove that Ulloa agreed with at least one other person to deliver more than 900 grams of a substance containing cocaine, and either Ulloa or a co-conspirator committed an act in furtherance of the agreement. 720 ILCS 570/405.1 (West 2006) ("A person commits criminal drug conspiracy when *** he agrees with another to the commission of that offense."); 720 ILCS 570/401(a)(2)(D) (West 2006); *People v. Stroud*, 392 Ill. App. 3d 776, 799-800 (2009). The trier of fact may use circumstantial evidence to infer that two persons agreed to commit a crime. *People v. Garth*, 353 Ill. App. 3d 108, 121 (2004).

¶ 17    Ulloa points out that the State did not show that Ulloa ever possessed the cocaine. Ulloa did not go to the Carlton, where Lopez picked up the black bag that apparently contained the cocaine. Ulloa did not drive the Dodge on the day of the transaction. Ulloa did not meet with Alamo, Flores or Chavez-Sanchez. The State presented no evidence of what the parties said during the phone calls. The State presented no direct evidence that Ulloa directed or instructed any of the participants in the transaction in any way.

¶ 18    However, the circumstantial evidence supports inferences that on December 18, 2006, Lopez and Ulloa spent some time together in a hotel room that Ulloa rented in Bedford Park. Lopez left $65,000 in cash in the room and drove to the Carlton in a Dodge Ulloa rented. At the Carlton, Lopez picked up a bag that held almost two kilograms of a substance containing cocaine. Alamo joined Lopez, and they went together to a restaurant where they met Flores and Chavez-Sanchez. Flores took the bag with the cocaine and put it in his Honda. Within minutes of the transfer of the cocaine to Flores, Lopez and Alamo both contacted Ulloa on their cell

phones. A piece of paper in Ulloa's hotel room bore names and numbers that appeared to record sales information. The circumstantial evidence supports the inference that Ulloa agreed to participate in the plan to sell two kilograms of cocaine to Flores and Chavez-Sanchez. Therefore, we find the evidence closely balanced, but sufficient to sustain the conviction. See *United States v. Casamento*, 887 F.2d 1141, 1159-60, 1167 (2d Cir. 1989).

¶ 19                                                    Accountability Instruction

¶ 20     To prove Ulloa guilty of conspiring to deliver cocaine, the State needed to prove that Ulloa himself agreed to the delivery. 720 ILCS 570/405.1 (West 2006); *People v. Shimkus*, 135 Ill. App. 3d 981, 989-90 (1985); *People v. Biers*, 41 Ill. App. 3d 576, 580 (1976). The trial court instructed the jurors to find Ulloa guilty if they found that Ulloa "or one for whose conduct [he] is legally responsible" agreed to the delivery. Ulloa now argues that the instruction requires reversal. Because Ulloa's attorney did not object to the instruction at trial, we review the issue only for plain error. *People v. Lewis*, 234 Ill. 2d 32, 42-43 (2009).

¶ 21     The State argues that the court properly instructed the jury on accountability because the jurors could hold Ulloa accountable for Flores's possession of cocaine with intent to deliver. The State's argument highlights the problem with the instruction. The State did not charge Ulloa with possession of cocaine with intent to deliver. Instead, the State charged Ulloa only with conspiracy to possess and deliver cocaine. The instruction conflates two distinct crimes: the crime of delivering cocaine and the crime of conspiring to deliver cocaine. See *Pinkerton v. United States*, 328 U.S. 640, 643 (1946); *People v. Williams*, 161 Ill. 2d 1, 51 (1994). The State charged Ulloa with agreeing to the delivery. The State cannot prove the charge by showing that someone for whom Ulloa bore legal responsibility agreed to the delivery, if Ulloa himself did not agree to the delivery. But the court's instruction told the jurors to find Ulloa guilty even if he did not agree to the delivery, as long as someone for whom he bore legal responsibility agreed to the delivery.

¶ 22     The pattern issues instruction for criminal drug conspiracy requires the State to prove "[t]hat the defendant agreed with _____ to the commission of the offense of _____; and *** [t]hat the defendant did so with the intent that the offense of _____ be committed; and *** [t]hat an act in furtherance of the agreement was performed by any party to the agreement." Illinois Pattern Jury Instructions, Criminal, No. 17.32 (4th ed. 2000). The pattern instruction does not include the accountability language the court added here. See Illinois Pattern Jury Instructions, Criminal, No. 17.32 (4th ed. 2000). Because the accountability instruction does not apply to the conspiracy charge, and the trial court's revision of the pattern issues instruction misstated the applicable law, the trial court erred by giving those instructions. See *People v. Pendleton*, 307 Ill. App. 3d 966, 968-69 (1999); *Biers*, 41 Ill. App. 3d at 580.

¶ 23     Forfeited errors may require reversal in two circumstances: "First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent person was wrongly convicted. [Citation.] Second, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). In this case with closely balanced evidence,

we find that the use of the inapplicable accountability instruction and the misstatement of the law in the issues instruction amounted to plain error. See *Herron*, 215 Ill. 2d at 178-79.

¶ 24 Moreover, the trial court committed a grave error when it used a nonpattern instruction that misstated the elements of the charge. Jurors following the instructions could have returned the guilty verdict without finding that Ulloa himself agreed to the delivery of the cocaine. Our supreme court stated the applicable principles in *People v. Ogunsola*, 87 Ill. 2d 216, 222 (1981), where the court said:

> "The interests of justice demand that the rule of waiver be modified, in criminal cases, where necessary to ensure the fundamental fairness of the trial. [Citations.] Fundamental fairness includes, among other things, seeing to it that certain basic instructions *** are given. Instructions on the elements of the offense are among these basic instructions, and we have recognized that the trial court has responsibility for ensuring that they are given. [Citation.] The failure correctly to inform the jury of the elements of the crime charged has been held to be error so grave and fundamental that the waiver rule should not apply."

¶ 25 The misstatement of the applicable law here, including a misstatement of the elements of the offense of conspiracy, is a grave error, affecting the fundamental fairness of the trial and the integrity of the judicial process. Due to the plain error, we must reverse the conviction and remand for a new trial. See *Herron*, 215 Ill. 2d at 178-79.

¶ 26                                    Issues Instruction

¶ 27 We address Ulloa's remaining issues only insofar as the issues may arise again on remand. The State charged Ulloa with conspiring to deliver more than 900 grams of a substance containing cocaine. The amount of the substance determined the sentencing range for the offense. See 720 ILCS 570/401(a)(2)(D), 405.1(c) (West 2006). Thus, on remand, the court must instruct the jurors that to find Ulloa guilty as charged, they must find that he agreed to the delivery of more than 900 grams of a substance containing cocaine. See *United States v. Cotton*, 535 U.S. 625, 632 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

¶ 28                           Money Counter and Heat Sealer

¶ 29 Finally, Ulloa contends that the trial court should not have permitted Cunningham to testify that he saw Ulloa purchase a money counter and a heat-sealing machine in January 2006. We review the trial court's evidentiary rulings for abuse of discretion. *People v. Santos*, 211 Ill. 2d 395, 401 (2004); see *United States v. Sawyer*, 85 F.3d 713, 739 (1st Cir. 1996) (using abuse of discretion standard to review evidentiary ruling when judgment reversed and case remanded on a different basis). Several courts have admitted into evidence testimony that a defendant had a money counter, to help prove a charge that the defendant possessed narcotics with intent to deliver, even when the investigators found no drugs near the money counter. See *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir. 2003); *United States v. Fowlie*, 24 F.3d 1059, 1063 (9th Cir. 1994). Testimony that defendants had heat sealers also supported findings of participation in drug transactions in several cases. See *Fowlie*, 24 F.3d at 1063; *United States v. Cruz*, 785 F.2d 399, 403 (2d Cir. 1986).

¶ 30 Ulloa's purchase of two items often associated with transactions involving illegal narcotics has some probative value to show that Ulloa intended to participate in narcotics transactions.

The purchases occurred almost a year before the transaction at issue, and no evidence connected either the heat sealer or the money counter to the specific transaction that led to Ulloa's arrest. However, we cannot say that the trial court abused its discretion by permitting Cunningham to testify about the purchases.

¶ 31                                    CONCLUSION

¶ 32        The State presented sufficient evidence to support the conviction of Ulloa for criminal drug conspiracy. However, in this case with closely balanced evidence, the court's misstatement of the applicable law by its use of the accountability instruction and insertion of accountability language in the issues instruction amounted to plain error requiring reversal. On remand, the court must instruct the jurors that to find Ulloa guilty as charged, they must find that he personally agreed to the delivery of more than 900 grams of a substance containing cocaine. We cannot say the trial court abused its discretion by admitting into evidence testimony that Ulloa bought a money counter and a heat sealer in Cicero in January 2006. Accordingly, we reverse the conviction and remand for a new trial.

¶ 33        Reversed and remanded.

¶ 34        JUSTICE PIERCE, specially concurring.

¶ 35        I concur with the judgment in this case. I write separately to address the issue of the admission of other-crimes evidence. I believe the trial court seriously overestimated the relevance of, and underestimated the danger of unfair prejudice from, the testimony concerning defendant's purchase of a heat sealer and the money counter, items sold openly and lawfully by a national retailer. In my judgment, the prosecution did not provide any evidence that logically connected these items to the events giving rise to defendant's arrest or his conspiracy charge.

¶ 36        Prior to trial the State filed a motion *in limine* to admit evidence of defendant's purchase of a money counter and heat-sealing machine at a Sam's Club on January 9, 2006. The State argued that defendant's purchase of these items was admissible other-crimes evidence to show defendant's plan, intent and knowledge. The trial court granted the State's motion over defendant's objection.

¶ 37        Here, defendant argued that the trial court abused its discretion by admitting this other-crimes evidence. Although defendant has forfeited this issue by not including it in his posttrial motion, the majority chose to address this issue without considering plain error on the basis that it was not dispositive here and would likely occur on retrial. Forfeiture aside, I believe that, on retrial, should the State seek to introduce similar evidence dealing with the purchase of these items 11 months before the offense charged, the trial court should exercise its discretion and exclude this testimony.

¶ 38        Other-crimes evidence is relevant and admissible when it "has any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence." *People v. Illgen*, 145 Ill. 2d 353, 365-66 (1991): Ill. R. Evid. 402 (eff. Jan. 1, 2011). Other-crimes evidence may be admitted to establish *modus operandi*, intent, identity, plan, motive, and common scheme or design. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *Illgen*, 145 Ill. 2d at 364-65. It is well established that evidence

of other crimes is not admissible to demonstrate a defendant's propensity to commit a crime. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *Illgen*, 145 Ill. 2d at 364.

¶ 39    In deciding whether to allow other-crimes evidence, the trial court must also weigh the probative value of the evidence sought to be introduced against its prejudicial effect. *People v. Haley*, 2011 IL App (1st) 093585, ¶ 57. If the prejudicial nature of the evidence outweighs its probative effect, the evidence should be excluded. *Id.*; Ill. R. Evid. 403 (eff. Jan. 1, 2011). The trial court's ruling on the admission of other-crimes evidence is reviewed for an abuse of discretion. *Haley*, 2011 IL App (1st) 093585, ¶ 57.

¶ 40    I agree with the State that "[i]t is well established in Illinois that drug paraphernalia such as scales and heat sealers are indicia of intent to deliver" (see *People v. McDonald*, 227 Ill. App. 3d 92 (1992); *People v. Williams*, 200 Ill. App. 3d 503 (1990)), yet a review of the facts of these cases supports my position that an "indicia of intent to deliver" was warranted because of the facts involved in those cases. In *McDonald*, the paraphernalia evidence was found in defendant's living room at the time of defendant's arrest and in proximity to the recovered narcotics. *McDonald*, 227 Ill. App. 3d at 99. In *Williams*, the defendant was arrested in the presence of a substantial amount of narcotics in an apartment he admitted he rented. *Williams*, 200 Ill. App. 3d at 518.

¶ 41    I also agree with the majority that courts frequently admit evidence of money counters and heat sealers in delivery cases; however, this is another proposition that should be put in context with the facts of the cases cited in support of the proposition. The majority relies on decisions that show a reasonable connection between the "paraphernalia" and the offense charged. For example, in *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir. 2003), the defendant was seen leaving his apartment with a large quantity of drugs and was arrested a short time later after a drug deal. The apartment was searched shortly after his arrest and the money counter was recovered. Clearly a jury could make an inference connecting the money counter to the operable facts to conclude the defendant had the intent to deliver narcotics. In *United States v. Fowlie*, 24 F.3d 1059, 1063 (9th Cir. 1994), there was no issue raised about the admissibility or relevance of a heat-sealing machine or a money counter found pursuant to a search warrant. Thus, although the majority is correct that these items were in evidence, I do not believe this decision supports admission of the subject items in this case. In *United States v. Cruz*, 785 F.2d 399, 403 (2d Cir. 1986), the defendant was arrested in his apartment in the presence of drugs and paraphernalia, including a heat sealer. Again, probative value existed because there was an obvious connection between the defendant, the circumstances of the arrest, the drugs, the charged offense and the heat sealer.

¶ 42    A review of this record shows this evidence had little, if any, probative value tending to prove defendant's participation in the drug conspiracy charged in this indictment. Officer Cunningham testified that he saw defendant purchase the heat sealer and the money counter in January 2006, 11 months before the incident that led to defendant's arrest. The large sum of cash recovered from defendant's hotel room, the "Protégé" bag and the cell phone evidence clearly had probative value because a reasonable juror could make a connection between these items and the conspiracy charge. The State elicited no evidence connecting either the heat sealer or the money counter to any transaction between Lopez or Chavez-Sanchez or Alamo or Flores, or any of the events testified to at trial. This purchase is remote in time and is not probative of whether Ulloa conspired to deliver cocaine. The purchase of the heat sealer and the money counter amounted to little more than propensity evidence used to lead the jury to

speculate that this remote purchase somehow connected defendant to the charged drug conspiracy. Prosecutors rightly press for every opportunity to present evidence they believe proves their case but not every fact known to the advocate is as probative as they believe. Judges must insist that a sound legal basis, an evidentiary connection, exists before improper evidence is allowed, otherwise the rigorous standard of proof beyond a reasonable doubt will quickly erode. The prejudicial effect of this evidence, in my judgment, clearly outweighs its probative value and should be excluded on remand.