960 N.E.2d 70 (2011)
355 Ill. Dec. 627
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Marci A. RIOS, Defendant-Appellant.
No. 4-10-0461.
Appellate Court of Illinois, Fourth District.
September 29, 2011.
*72 Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, Janieen R. Tarrance, Asst. Appellate Defender, Office of State Appellate Defender, for Marci A. Rios.
Thomas J. Brown, Livingston County State's Attorney, Patrick Delfino, Director, Robert J. Biderman, Dep. Director, Perry L. Miller, Staff Attorney, State's Attorneys Appellate Prosecutor, for People.

OPINION
Justice TURNER delivered the judgment of the court, with opinion.
¶ 1 In December 2008, the State charged defendant, Marci A. Rios, with one count of unlawful possession with the intent to deliver a controlled substance (720 ILCS 570/401(c)(1) (West 2008)), two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2008)), and one count of unlawful possession with the intent to deliver cannabis (720 ILCS 550/5(d) (West 2008)). In February 2009, the Livingston County circuit court accepted defendant's plea of guilty to all four charges. At an April 2009 hearing, the court sentenced defendant to concurrent prison terms of 12 years for unlawful possession with the intent to deliver a controlled substance, 5 years for each count of unlawful delivery of a controlled substance, and 3 years for unlawful possession with the intent to deliver cannabis. In May 2009, defendant filed a motion to reconsider her sentence, which the court denied. Defendant appealed, and this court remanded the cause for further proceedings consistent with Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). People v. Rios, No. 4-09-0690 (Feb. 18, 2010) (unpublished order under Supreme Court Rule 23).
¶ 2 On remand, defense counsel filed a proper Rule 604(d) certificate, and after a new hearing, the trial court once more denied defendant's motion to reconsider her sentence. Defendant again appeals, asserting the court erred by considering improper factors in aggravation when sentencing her. We affirm.

*73 ¶ 3 I. BACKGROUND
¶ 4 The State's December 4, 2008, information alleged defendant committed (1) unlawful possession with the intent to deliver more than 1 but less than 15 grams of heroin on December 4, 2008 (count I); (2) unlawful delivery of less than 1 gram of heroin on December 2, 2008 (count II); (3) unlawful delivery of less than 1 gram of heroin on November 26, 2008 (count III); and (4) unlawful possession with the intent to deliver more than 30 grams but less than 500 grams of cannabis on December 4, 2008 (count IV). The next day, Judge Jennifer H. Bauknecht set defendant's bond, and defendant stated the following: "Ma'am, please. I have two children. I don't even know where they are. This is what I do. I know this isn't a good thing, but that's how I pay my bills." In February 2009, the State filed an amended information, modifying count I by changing the amount of heroin to more than 5 grams but less than 15 grams.
¶ 5 At a February 4, 2009, hearing, defendant entered an open plea of guilty to the charged offenses. Judge Robert M. Travers presided over the plea hearing. Before accepting defendant's plea, the trial court heard a factual basis that defendant sold packets of heroin to a confidential source from her residence on November 26 and December 4, 2008. A third controlled buy occurred at her residence on December 2, 2008, which was dispensed by another resident. On December 4, 2008, police executed a warrant for defendant and her residence. The police found a Ziploc bag containing 233 grams of a substance that field-tested positive for cannabis in the bathroom, along with three more sandwich bags containing a total of 11.5 grams of cannabis. The police also found nine foils of heroin in defendant's bra, which contained approximately 2.7 grams that field-tested positive for heroin, along with 19 more foils of heroin located in the residence. The cumulative weight of all of the heroin in the foils was 5.12 grams. The state crime lab confirmed the substances recovered contained cannabis and heroin, respectively. In an interview, defendant had told the police she alone had purchased in Chicago all of the heroin in the residence and brought it back to Pontiac.
¶ 6 The April 16, 2009, presentence investigation report showed defendant had a criminal history of five misdemeanors and numerous traffic offenses. Defendant had been employed until June 2007 when she quit due to being "`dope sick.'" She had "been off work, `[a]lmost 2 years and was living off her boyfriend,' who had been working two jobs." She described her financial situation as "`[c]omfortable'" since her boyfriend was working two jobs. Defendant was "`[m]aking $400/day sometimes more selling heroin'" and "`[h]ad 5 or 6 people buying off her.'" As to substance abuse, defendant acknowledged having a problem with heroin. Her heroin abuse caused her initially to leave work. She was "`[s]elling heroin to afford the habit.'" Additionally, defendant also indicated she had participated in a substance abuse evaluation at the Institute of Personal Development. The institute's records note defendant appeared there on August 12, 2008, and stated she wanted off heroin. The institute recommended defendant participate in outpatient treatment and prescribed her Suboxone to help with the heroin addiction. Defendant never returned to the institute.
¶ 7 On April 22, 2009, Judge Travers held defendant's sentencing hearing. In addition to the presentence investigation report, the State also asked the trial court to take judicial notice of the transcript of defendant's December 5, 2008, bond hearing. After receiving the parties' evidence and hearing their arguments, the court *74 found no mitigating factors and then stated, in pertinent part, the following:
"As far as factors in aggravation, I find that the defendant's conduct caused or threatened serious harm to others, that the defendant received compensation for committing the offense, and that a sentence is necessary to deter others from committing the same crimes.
I note from the pre-sentence investigation that the defendant was selling heroin in the community for a period of approximately two years, by her own admission. That she was making about $400 a day off the sale of heroin and regularly supplying five or six people. That is herthose are her words out of the pre-sentence investigation, those are not the words of the State. Those are her words. She also indicated that she was doing this at a time when she was very comfortable financially because her boyfriend was working two jobs. So there was really no financial incentive here. * * * I would also note that there was no suggestion at any time that she sought treatment or sought help in any form, despite the fact that she was comfortable financially and, arguably, had the wherewithal to ask someone for assistance, and that did not occur.
I also do note from the prior comments in court and also from pre-sentence, that this is something she willingly admits doing over an extended period of time.
The question then becomes what does the court do with individuals that sell heroin on a regular basis over an extended period of time to people in our community."
The court sentenced defendant to concurrent prison terms of 12 years for count I, 5 years for count II, 5 years for count III, and 3 years for count IV.
¶ 8 On May 15, 2009, defendant filed a motion to reconsider her sentence, asserting her four sentences were excessive. At the September 9, 2009, hearing on the motion, Judge Travers denied the motion, noting the following:
"I believe at that time I also noted that one of the statements the defendant had made was that this was not something that she did as a result of some financial pressure, that, in fact, her boyfriend had been working two jobs and really was no financial pressure involved in the commission of this particular set of offenses. From Page 6 of the pre-sentence, it describes her financial condition she indicated, `Comfortable. Jeremy was working two jobs.' She also went on to say that she was making $400 a day, and sometimes more, selling heroin. And that she had five or six people buying off of her.
The court indicated that this was more than someone who had a drug problem. This is someone that was involved in long term and fairly substantial drug sales in this particular community as shown by the amounts taken off of her as shown by the charges that she pled guilty to, which involved not just the possession, but the intent to deliver; and not just heroin or cocaine, but the cannabis also."
The court also referenced defendant's statements at the bond hearing.
¶ 9 Defendant appealed, and this court remanded the cause because the attorney's certificate required by Rule 604(d) did not strictly comply with that rule. Rios, slip order at 7-9. On remand, defense counsel filed a proper Rule 604(d) certificate. On June 21, 2010, Judge Bauknecht held a new hearing on defendant's motion to reconsider her sentence and denied the motion. That same day, defendant filed a notice of appeal in sufficient compliance *75 with Illinois Supreme Court Rule 606 (eff. Mar.20, 2009), and thus this court has jurisdiction pursuant to Rule 604(d).

¶ 10 II. ANALYSIS
¶ 11 On appeal, defendant asserts the trial court erred in sentencing her by (1) considering a factor in aggravation that was inherent in the offense and (2) relying on mistaken facts. The State asserts defendant has forfeited her sentencing arguments because she did not include them in her motion to reconsider her sentence. See People v. Thompson, 375 Ill.App.3d 488, 492, 314 Ill.Dec. 476, 874 N.E.2d 572, 575-76 (2007) ("Under Rule 604(d), any issue not raised in a motion to withdraw a guilty plea or to reconsider a sentence after a guilty plea is forfeited."). In reply, defendant asserts her sentencing issue is reviewable under the plain-error doctrine (Ill.S.Ct. R. 615(a) (eff.Jan.1, 1967)).
¶ 12 The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:
"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." People v. Sargent, 239 Ill.2d 166, 189, 346 Ill.Dec. 441, 940 N.E.2d 1045, 1058 (2010).
We begin our plain-error analysis by first determining whether any error occurred at all. Sargent, 239 Ill.2d at 189, 346 Ill.Dec. 441, 940 N.E.2d at 1059. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. Sargent, 239 Ill.2d at 189-90, 346 Ill.Dec. 441, 940 N.E.2d at 1059. Under both prongs, the defendant bears the burden of persuasion. Sargent, 239 Ill.2d at 190, 346 Ill.Dec. 441, 940 N.E.2d at 1059.

¶ 13 A. Receipt of Compensation
¶ 14 We begin by clarifying the law in this area. Section 5-5-3.2(a) of the Unified Code of Corrections lists factors that may be considered in aggravation in sentencing a defendant, and one of those factors is "the defendant received compensation for committing the offense." 730 ILCS 5/5-5-3.2(a)(2) (West 2008). In People v. Conover, 84 Ill.2d 400, 405, 50 Ill. Dec. 638, 419 N.E.2d 906, 909 (1981), our supreme court distinguished the proceeds of the crime from payments made to commit the crime. The Conover court found section 5-5-3.2(a)(2) was an applicable factor in aggravation only when the defendant received payments to commit the crime. Conover, 84 Ill.2d at 405, 50 Ill. Dec. 638, 419 N.E.2d at 909. Thus, with unlawful delivery of a controlled substance, section 5-5-3.2(a)(2) would only apply if the defendant received money to sell the drugs in addition to the proceeds the defendant received from the sale. See People v. Peterson, 227 Ill.App.3d 20, 24, 169 Ill.Dec. 16, 590 N.E.2d 935, 939 (1992) (where section 5-5-3.2(a)(2) applied because the defendant received between $60 and $80 before the drug transaction took place).
¶ 15 While the proceeds of the crime are not an aggravating factor under section 5-5-3.2(a)(2), they can be proper considerations at sentencing when the proceeds relate to such things as the extent and nature of a defendant's involvement in a particular criminal enterprise, a defendant's underlying motivation for committing the offense, the likelihood of the defendant's commission of similar offenses in *76 the future and the need to deter others from committing similar crimes. People v. M.I.D., 324 Ill.App.3d 156, 159, 257 Ill.Dec. 351, 753 N.E.2d 546, 549 (2001). For example, a "court may properly consider a defendant's efforts to maximize profits from a drug enterprise in sentencing for unlawful possession, to the extent that such evidence reflects on the nature of the crime." M.I.D., 324 Ill.App.3d at 159-60, 257 Ill.Dec. 351, 753 N.E.2d at 549.
¶ 16 In M.I.D., 324 Ill.App.3d at 160, 257 Ill.Dec. 351, 753 N.E.2d at 550, the reviewing court concluded the trial court did not err by noting the statutory factor of receipt of compensation in sentencing the defendant for unlawful possession with the intent to deliver. There, the trial court listed several statutory factors in aggravation, including the defendant received compensation for the offense. M.I.D., 324 Ill. App.3d at 158, 257 Ill.Dec. 351, 753 N.E.2d at 548. However, the court then noted the defendant's own testimony in which she admitted selling a substantial amount of drugs in the Canton area over a significant period of time. M.I.D., 324 Ill.App.3d at 160, 257 Ill.Dec. 351, 753 N.E.2d at 549. The M.I.D. court found the judge's comments showed it considered the proceeds from the defendant's criminal enterprise as bearing on the nature of the offense. M.I.D., 324 Ill.App.3d at 160, 257 Ill.Dec. 351, 753 N.E.2d at 550. Moreover, during the hearing on the defendant's motion to reconsider her sentence, the trial court reiterated the defendant's role as a main supplier of drugs in Canton was an aggravating circumstance that it considered in imposing the defendant's sentence and noted it had not found credible the defendant's denial she had received profits from the sale of drugs. M.I.D., 324 Ill.App.3d at 160, 257 Ill.Dec. 351, 753 N.E.2d at 550.
¶ 17 As in M.I.D., the trial court here listed the receipt of compensation when mentioning the statutory aggravating factors but then went onto discuss how much money defendant was making a day, the number of people she was regularly supplying, and the fact she had no financial incentive for selling drugs. At the hearing on defendant's motion to reconsider her sentence, the court again emphasized no financial pressure was involved in the commission of this offense, defendant was making $400 per day or more selling heroin, and she had five or six people buying from her. The court also highlighted defendant had been involved in selling drugs for a long time and had fairly substantial sales. Thus, in this case, the court's discussion indicates it was discussing the proceeds of the crime in addressing both the extent and nature of defendant's involvement in selling drugs, her underlying motivation for committing the offense, and the nature of the offenses.
¶ 18 Accordingly, while the trial court should not have listed the receipt of compensation as a statutory aggravating factor, we find no error because the record shows the trial court was actually considering defendant's proceeds for her crimes as it related to the nature of the offense and other proper sentencing considerations.

¶ 19 B. Unsupported Aggravating Factors
¶ 20 Defendant also asserts the trial court used erroneous facts to aggravate her sentence because those facts were not supported by the record. See People v. Hammock, 68 Ill.App.3d 34, 43, 24 Ill.Dec. 655, 385 N.E.2d 796, 803 (1979) (finding that, in sentencing the defendant, the trial court improperly considered the fact the defendant inflicted mental abuse on the decedent when no evidence showed the defendant had engaged in such activity). The allegedly unsupported statements are (1) defendant had sold drugs for two years and (2) never sought treatment for her *77 addiction. The State asserts those statements have factual support, and even if they were improper, remandment for resentencing is not required.
¶ 21 We agree with the State that the trial court's two statements were not factually erroneous. Those statements are reasonable inferences from and/or interpretations of the evidence before the court.

¶ 22 1. Duration of Defendant's Selling Drugs

¶ 23 Before handing down defendant's sentences, the trial court stated, inter alia, "I note from the pre-sentence investigation that the defendant was selling heroin in the community for a period of approximately two years, by her own admission." While defendant did not specifically state she had been selling drugs for two years, one can reasonably infer from the record defendant had been selling drugs for that long.
¶ 24 The relevant evidence indicating defendant had been selling drugs for two years is the following. The presentence investigation report showed defendant had been unemployed for two years, had quit working due to her heroin addiction, and sold drugs to support her heroin addiction. Defendant's statements at the bond hearing indicated she considered selling drugs her occupation. Additionally, the facts defendant had five to six regular customers and made $400 or more a day also indicate her drug dealing was not a new enterprise.
¶ 25 Accordingly, we conclude the trial court did not err by finding defendant had been selling drugs for two years because it is a reasonable inference from the aforementioned evidence that defendant had been selling drugs that long.

¶ 26 2. Defendant's Failure To Seek Help

¶ 27 At defendant's sentencing hearing, the trial court also stated the following: "I would also note that there was no suggestion at any time that she sought treatment or sought help in any form, despite the fact that she was comfortable financially and, arguably, had the wherewithal to ask someone for assistance, and that did not occur." Defendant notes her presentence investigation report showed that, in August 2008, defendant had gone to the Institute for Personal Development and stated she wanted off heroin. The institute recommended outpatient treatment and gave defendant a prescription. However, defendant never returned, and her case was closed. Since defendant did not follow up and make any attempt at outpatient treatment, the trial court's finding defendant never sought help for addiction is a reasonable interpretation of defendant's actions with the institute.
¶ 28 Accordingly, we conclude defendant has not shown the trial court committed any errors in sentencing her.

¶ 29 III. CONCLUSION
¶ 30 For the reasons stated, we affirm the Livingston County circuit court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.
¶ 31 Affirmed.
Justices STEIGMANN and POPE concurred in the judgment and opinion.