NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170902-U

NO. 4-17-0902

IN THE APPELLATE COURT

FILED
January 23, 2020
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ANTHONY F. BAUER, JR., | ) | No. 17CF65 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |
| | ) | |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding (1) the trial court did not abuse its discretion in sentencing defendant to 20 years' imprisonment, (2) defendant forfeited his argument that the trial court improperly considered an aggravating factor at sentencing, and (3) any error did not rise to the level of plain error.

¶ 2    In August 2017, defendant, Anthony F. Bauer, Jr., pleaded guilty to two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2016)) (counts I and II), unlawful possession of a controlled substance with the intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2016)) (count III) for the possession of more than 15 grams but less than 100 grams of cocaine, and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)) (count IV). The trial court sentenced defendant to concurrent prison terms of 12

years each for counts I and II, 20 years for count III, and 8 years for count IV. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 3    On appeal, defendant argues the trial court erred by (1) failing to consider his rehabilitative potential, (2) improperly using a factor inherent in the offense to increase his sentence, and (3) improperly using facts outside the evidence to increase his sentence. We affirm.

¶ 4    I. BACKGROUND

¶ 5    In February and March 2017, the Livingston County Protective Unit conducted three controlled buys of cocaine with a confidential informant. Two of the buys were conducted with defendant, while the third was conducted with an associate of defendant, Jenna DeMoss. As a result of the controlled buys, a search warrant was executed on defendant's residence. Defendant was arrested and charged by information with two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2016)) (counts I and II), unlawful possession of a controlled substance with the intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2016)) (count III) for the possession of more than 15 grams but less than 100 grams of cocaine, and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)) (count IV).

¶ 6    In May 2017, defendant filed a motion to quash search warrant and to suppress evidence seized, which described the seized items as follows:

"On March 1, 2017, a search pursuant to said warrant was executed at 407.W.Mazon, Avenue, Dwight, Livingston County, Illinois, and the following items were seize [*sic*]: cocaine, $100.00 in cash, $6,522.00 in cash, $79.72 in coins, Defendant's driver's license, mail, electronic scales, electronic money counter, drug paraphernalia, a bag with a white powder substance, 5 white chunks

- 2 -

of a white substance,, a Jennings, Bryce 380 caliber handgun, empty bottles of codeine and 'numerous items from the residence suspected to have been bought with drug money.' "

On June 1, 2017, the trial court conducted a hearing on defendant's motion to quash, and the motion was denied.

¶ 7     On August 31, 2017, defendant entered an open guilty plea on all counts. The trial court properly admonished defendant, and the State set forth the factual basis as follows:

"MR. REGNIER [(PROSECUTOR)]: Thank you, Judge. As part of an ongoing drug investigation by Officer Maier with the Dwight Police Department and Proactive Unit, drugs were purchased, specifically three grams of cocaine, on February 23rd and three grams of cocaine on March 2nd as tested by the Illinois State Police crime laboratory. This was purchased in Dwight at a gas station, observed by officers and sold to a confidential source. The amount that was being sold was in excess of one gram, being three on each of those occurrences.

Based off those occurrences, a buy-bust was initiated where this Defendant was immediately arrested. The police sat on his house. A search warrant was obtained and the house was searched. Within the house was found as confirmed by the laboratory 33 grams of a substance containing cocaine as well as a .380 Caliber handgun, [defendant] admitting possession of both of those items.

Additionally found within his house as relevant toward delivery was over $6,000 in Untied States currency containing the reported money from the controlled buy on March 2nd as well as money from a controlled buy that was conducted on [defendant] on February 28th where a Jenna DeMoss had ended up

- 3 -

selling that money, or selling that cocaine. $80 of the currency had gone towards [defendant] and was with him at the time of the search warrant."

Defendant did not object to the factual basis and the trial court accepted defendant's guilty pleas on all four counts.

¶ 8        On October 6, 2017, a presentence investigation report (PSI) was filed. The PSI indicated defendant was born on July 15, 1996. The report listed defendant's criminal history: a 2014 conviction for criminal sexual assault, a Class A misdemeanor, for which he received 30 months' probation, and a 2015 conviction for unlawful possession of a controlled substance, a Class 4 felony, for which he also received 30 months' probation. Defendant was still on probation for these convictions when the instant offenses were committed. The State had filed petitions to revoke defendant's probation in both cases.

¶ 9        Under the "Family History" section, the PSI indicated defendant had a "great relationship" with his mother, stepfather, and older sister. Further, the PSI stated "defendant has never been married but has been in a relationship with Lauren Hunt for the past 2 ½ years. *** The couple were [*sic*] expecting a child last year, but the baby passed away prior to birth due to Turners Syndrome, a condition with fluid in the amniotic sac."

¶ 10        The PSI indicated defendant graduated from high school in 2014, and at the time of his arrest was employed full-time. The PSI also stated defendant described his financial situation as "not good at this time." Defendant stated his financial difficulties began when he started using cocaine and that he was not working full-time hours prior to his arrest due to his cocaine use.

¶ 11        The "Substance Use and Treatment History" section stated as follows:

"[Defendant] informed that he began to use Xanax in 2014 after the death of his uncle. The defendant informed that prior to this time he was doing well at school, was in athletics and was not a 'partier'. After the passing of his uncle, the defendant lost interest in his athletics and schooling at that time.

The defendant stated too that after the passing of his child, he turned to drugs as well. [Defendant] admitted that based on the fact he was submitting to drugs screens to Probation, he could not use cannabis (which he was an occasional user) or pills, as he did not want to turn up with a dirty drug screen. [Defendant] also informed he turned to cocaine at this time, knowing that this substance escapes from your body quickly and he was able to pass drug screens.

[Defendant] stated that he then began to use more often and the cost was too much for him. He was missing work due to use, and also using while on the job. That is when he admitted to begin selling drugs to pay for his use of cocaine.

As part of his Probation in 15CF41, the defendant was attending alcohol and drug treatment at IHR in Pontiac. The defendant was in compliance with his treatment (successfully completed) and was passing all of his drug screens prior to his arrest in [the instant case]."

¶ 12        On October 12, 2017, the trial court held defendant's sentencing hearing. At the sentencing hearing, Brian Maier, a police investigator, was called as a witness in aggravation. Maier testified he had viewed a recording of a video phone call at the jail between defendant and DeMoss. Maier testified that the video captured DeMoss showing defendant a small Baggie of a controlled substance appearing to be cocaine.

¶ 13    Defendant's mother, Manuella Scoles, testified as a witness in mitigation. Scoles testified that prior to becoming involved in drugs shortly before he turned 18, defendant had done well in school and been involved in athletics. Scoles said defendant was doing better and was working until his child died. At that point defendant became more difficult to reach. Scoles also testified she had seen a difference in defendant's attitude and demeanor since his arrest. She described defendant when he first went to jail as having "a huge chip on his shoulder." Now, "he knows what he wants in life; and he knows that this isn't what he wants[.]"

¶ 14    The State recommended concurrent prison sentences of 26 years on count III, 15 years each on counts I and II, and 10 years on count IV. Defense counsel recommended concurrent prison sentences of 12 years on count III and 6 years each on counts I, II, and IV.

¶ 15    Defendant made a statement in allocution:

"THE DEFENDANT: Your Honor, just under a year ago I made a bad decision on both practical and moral levels. I had a selfish disregard for others. I knowingly broke the law. I left my family and distanced myself from my true friends.

I am prepared to accept the punishment the Court decides upon me. I am truly sorry for the actions I chose to make. And I would like to thank my parents who are here today who have loved and supported me and to apologize for the pain and embarrassment I've caused on them.

Your Honor, thank you for hearing my statement and considering me."

¶ 16    In sentencing defendant, the trial court found "a number of aggravating factors present in this case." The court stated the following:

"First of all, I do believe that your conduct caused or threatened serious harm to others. Even though I'm prepared to accept [defense counsel's] proffer that there were no bullets for the gun, I'm prepared to accept that, but regardless, that doesn't mean that whoever you are dealing with doesn't have a gun and sees your gun and pulls his or her gun out. I mean, it's never good when you are dealing drugs with a gun bullets or no bullets. There is a potential for the deal to go awry and people to get hurt. Bystanders could be hurt.

I also believe that when you're, you're using drugs and bringing drugs into the community, that enhances the problem which is already out of control. And there's a distinction between being the person who's addicted to the drugs and being the person who's selling the drugs. Being addicted is part of the problem. Selling is contributing to the problem, making the problem worse. And so I do think that that is a very strong factor in aggravation. The potential for harm to the community, not just the people that may be using the drugs but first responders putting themselves in dangerous situations getting to these drug overdoses and/or searches; and just it's not a good situation. So it is, it does have a very real potential for serious harm.

I do also believe that your prior record of criminal activity is a factor in aggravation I guess not so much for those crimes themselves, and really I think the factor is more likely number 12 that you were on probation at the time. So when all this happened, you were already on felony probation, already had the resources.

\* \* \*

- 7 -

Your prior record I would say is also a factor in aggravation because you had engaged in prior felony misconduct, but it's not as strong as the fact that you were on probation at the time.

Deterrence is a very strong factor. It's not okay. It just is not okay to deal drugs in the community. I've talked already about the impact it has on the community. And again, it's hard to say, and I recognize that you believe and I don't doubt I guess that you had an addiction at the time. There's ways to handle that. Not everybody gets addicted to drugs and then sells large quantities within the community. That's a conscious decision on your part.

And, you know, I guess everything is relative to where you're at. This is a pretty big sale, a pretty big amount of drugs. Probably happens all the time in other communities. Not in this one. I mean, I don't very often see 33 grams of cocaine. I don't often see deliveries that are in excess of three grams. So it's a, relatively speaking this is a very, you know, you went from using drugs to off the charts in terms of what you are doing by selling.

\* \* \*

[Defense counsel] has argued that he believes that this was the result of circumstances unlikely to reoccur. I don't know. I can't say that that is a mitigating factor in this case. I'm not convinced of that. I do believe that you had a drug addiction. But again, drug addiction doesn't automatically equate to Class X possession of 33 grams of cocaine with intent to deliver with a weapon. They are two different things.

And maybe you got into the drugs because of the death of your unborn child, and I'm sure that was a very horrible time. I'm not taking away from that. But I don't see the correlation between that and the instant crime. I see the correlation between that and using drugs. So there really are not very many mitigating factors present in this case.

The other thing I would just like to mention is we've got a pattern of conduct here. I mean, it's pretty evident this is not a one time deal where you got caught giving a friend, you know, a little bit of cocaine. This is a pattern of conduct of dealing large amounts of cocaine within the community. And I think that's significant also because I don't know, you know, 33 grams, we don't want that in the community. That's just way too much.

So having considered all of the factors and there are other things that the Court is mindful of, the cost of incarceration, other things that I can't possibly mention everything, but I do in this case believe that the aggravating factors strongly outweigh the mitigating factors."

The court concluded by sentencing defendant to concurrent prison terms of 12 years each for counts I and II, 20 years for count III, and 8 years for count IV.

¶ 17    On November 13, 2017, defendant filed a motion to reconsider his sentence, arguing the sentence was excessive and disproportionate to other sentences for similar offenses. On December 7, 2017, the trial court denied defendant's motion.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

- 9 -

¶ 20    On appeal, defendant argues the trial court erred by (1) failing to consider his rehabilitative potential, (2) improperly using a factor inherent in the offense to increase his sentence, and (3) improperly using facts outside the evidence to increase his sentence.

¶ 21                               A. Rehabilitative Potential

¶ 22    Defendant argues the trial court's sentence was excessive, contending various mitigating factors were not considered by the court, namely, his age, his positive work history, and his lack of past incarceration, which showed his rehabilitative potential. We disagree.

¶ 23    "A trial court's determination regarding the length of a defendant's sentence will not be disturbed unless the trial court abused its discretion or relied on improper factors when imposing a sentence." *People v. Smith*, 318 Ill. App. 3d 64, 74, 740 N.E.2d 1210, 1218 (2000). "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and the court is presumed to have considered any evidence in mitigation which is before it." *People v. Donath*, 357 Ill. App. 3d 57, 72, 827 N.E.2d 1001, 1014 (2005). "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000). "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213, 940 N.E.2d 1062, 1066 (2010).

¶ 24　　　　　In this case, defendant pleaded guilty to a Class X felony. The prison term for a Class X felony ranges from 6 years to 30 years. 730 ILCS 5/5-4.5-25(a) (West 2016). Defendant's sentence of 20 years' imprisonment fell within the statutory range of sentences. "A sentence within the statutory guidelines is presumed proper." *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 12, 65 N.E.3d 419. Nothing in the record defeats this presumption. The trial court considered mitigating factors presented by defendant, including defendant's claim that his actions were the result of circumstances unlikely to reoccur. The trial court did not find defendant's claims persuasive. Similarly, defendant highlights his lack of past incarceration as a mitigating factor. However, the trial court found defendant's criminal history, including that he was on felony probation at the time of the present offense, to be an aggravating factor rather than a mitigating factor. Defendant contends the trial court did not consider his age; however, his age was obvious to the court as he stood before it and is included on the first page of the PSI. "[A] trial court setting forth the reasons for the sentence imposed need not recite and assign a value to each fact presented at the sentencing hearing." *People v. White*, 237 Ill. App. 3d 967, 970, 605 N.E.2d 720, 722 (1992). The trial court stated it had "considered all the factors and there are other things that the Court is mindful of, *** other things that I can't possibly mention everything, but I do in this case believe that the aggravating factors strongly outweigh the mitigating factors." In this instance, the court imposed a sentence in the middle of the possible sentencing range, well below the maximum. See 730 ILCS 5/5-4.5-25(a) (West 2016). "The existence of mitigating factors does not require the trial court to reduce a sentence from the maximum allowed." *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001). We cannot say the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Moreover,

defendant contends in his brief a sentence "in the middle of the Class X range would be appropriate." Here, defendant was sentenced to 20 years from a possible sentencing range of 6 years to 30 years. Although defendant's sentence was not precisely the mathematical median of the sentencing range, we find defendant's 20-year sentence remains "in the middle" of the sentencing range. Thus, defendant's sentence was not excessive, and the court did not abuse its discretion.

¶ 25                     B. Consideration of Improper Factors in Sentencing

¶ 26            Defendant further argues the trial court erred by improperly considering as factors in aggravation (1) defendant's intent to sell, a factor inherent in the offense, and (2) a fact outside the evidence.

¶ 27            Initially, we note defendant failed to object at sentencing or raise this issue in his motion to reconsider the sentence. Thus, the issue is forfeited on appeal. See *People v. Hestand*, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005) (holding that a defendant must object at trial and raise the issue in his posttrial motion to preserve the issue for review). In his brief, however, defendant argues the issue should be addressed as a matter of plain error.

¶ 28            "[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010). Under both prongs of the plain-error analysis, the burden of persuasion remains with the defendant. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015. As the first step in the analysis, we must determine "whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49, 89 N.E.3d 675; see also *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. "If error did occur, we then consider whether

either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272. "[T]he plain error rule is not a general savings clause for any alleged error, but instead is designed to address *serious injustices*." (Emphasis in original.) *People v. Williams*, 299 Ill. App. 3d 791, 796, 701 N.E.2d 1186, 1189 (1998).

¶ 29 The question of whether the trial court relied on improper factors in imposing defendant's sentence presents a question of law, which we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. The defendant has the burden "to affirmatively establish that the sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943, 904 N.E.2d 1022, 1028 (2009).

¶ 30 Generally, where "a trial court considers an improper factor in aggravation, the case must be remanded unless it appears from the record that the weight placed upon the improper factor was so insignificant that it did not lead to a greater sentence." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18. "However, where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." *People v. Bourke*, 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340 (1983). When making this determination, courts have considered: "(1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor[ ] and (2) whether the sentence received was substantially less than the maximum sentence permissible by statute." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18.

- 13 -

¶ 31    In the case *sub judice*, defendant was convicted of unlawful possession of a controlled substance with intent to deliver, a Class X felony. See 720 ILCS 570/401(a) (West 2016). As we previously noted, a defendant convicted of a Class X felony is subject to a sentence of 6 to 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2016).

¶ 32    Defendant first takes issue with the trial court's statement as follows:

"I also believe that when you're, you're using drugs and bringing drugs into the community, that enhances the problem which is already out of control. And there's a distinction between being the person who's addicted to the drugs and being the person who's selling the drugs. Being addicted is part of the problem. Selling is contributing to the problem, making the problem worse. And so I do think that that is a very strong factor in aggravation. The potential for harm to the community, not just the people that may be using the drugs but first responders putting themselves in dangerous situations getting to these drug overdoses and/or searches; and just it's not a good situation. So it is, it does have very real potential for serious harm."

Defendant argues the trial court considered, as demonstrated by the above statement, defendant's intent to sell as a "very strong factor in aggravation." An intent to sell is a factor inherent in the offense of unlawful possession of a controlled substance with intent to deliver. See 720 ILCS 570/401(a)(2)(A) (West 2016). "It is well established that a factor inherent in the offense should not be considered as a factor in aggravation at sentencing." *Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. Thus, a single factor cannot be used both as an element of the offense and as a basis for imposing a harsher sentence than would have been imposed without it. In this case,

we find the trial court did not improperly consider defendant's intent to sell as an aggravating factor.

¶ 33    In *People v. Rios*, 2011 IL App (4th) 100461, 960 N.E.2d 70, the defendant contended the trial court improperly considered the receipt of compensation as a factor inherent in the offense when imposing the defendant's sentence. In rejecting this contention, this court stated:

> "While the proceeds of the crime are not an aggravating factor under section 5-5-3.2(a)(2), they can be proper considerations at sentencing when the proceeds relate to such things as the extent and nature of a defendant's involvement in a particular criminal enterprise, a defendant's underlying motivation for committing the offense, the likelihood of the defendant's commission of similar offenses in the future and the need to deter others from committing similar crimes. [Citation]." *Rios*, 2011 IL App (4th) 100461, ¶ 15.

This court then stated:

> "[T]he trial court here listed the receipt of compensation when mentioning the statutory aggravating factors but then went onto discuss how much money [the] defendant was making a day, the number of people she was regularly supplying, and the fact she had no financial incentive for selling drugs. At the hearing on [the] defendant's motion to reconsider her sentence, the court again emphasized no financial pressure was involved in the commission of this offense, [the] defendant was making $400 per day or more selling heroin, and she had five or six people buying from her. The court also highlighted [the] defendant had been involved in selling drugs for a long time and had fairly substantial sales.

Thus, in this case, the court's discussion indicates it was discussing the proceeds of the crime in addressing both the extent and nature of defendant's involvement in selling drugs, her underlying motivation for committing the offense, and the nature of the offenses.

Accordingly, while the trial court should not have listed the receipt of compensation as a statutory aggravating factor, we find no error because the record shows the trial court was actually considering defendant's proceeds for her crimes as it related to the nature of the offense and other proper sentencing considerations." *Rios*, 2011 IL App (4th) 100461, ¶¶ 17-18.

¶ 34 We find this case analogous to *Rios*. In this case, when the trial court's statement is read in context and in conjunction with its other statements, it is evident the court considered as a factor in aggravation the extent and nature of defendant's involvement in selling drugs in Livingston County.

¶ 35 The trial court noted the "pattern of conduct" the evidence against defendant presented. We agree it is a reasonable inference that the evidence presents a narrative of a pattern of conduct. After two controlled buys, the search warrant issued for defendant yielded evidence from which reasonable inferences could be made regarding defendant's level of participation. First, the funds from the controlled buy with DeMoss were in defendant's possession. Second, 33 grams of cocaine were seized. Third, $6522 was seized despite defendant's statement that he was struggling financially prior to dealing cocaine. It is a reasonable inference the seized funds were the proceeds of cocaine sales. Finally, an electronic money counter was seized, creating a reasonable inference defendant was involved with a significant number of cash transactions. See

*People v. Ulloa*, 2015 IL App (1st) 131632, ¶ 29, 36 N.E.3d 445 (the purchase of a money counter is relevant to prove a defendant intends to participate in narcotic transactions).

¶ 36   In addition, the trial court made other comments during sentencing to demonstrate its concern with defendant's level of participation. The court expressed the need for deterrence, referring to the conscious decision of defendant to "sell[ ] large quantities [of cocaine] within the community." See *Rios*, 2011 IL App (4th) 100461, ¶ 15 (holding that a nonaggravating factor may be relevant to the need to deter others from committing similar crimes). The court also expressed it was not convinced the circumstances were unlikely to reoccur. See *Rios*, 2011 IL App (4th) 100461, ¶ 15 (holding that a nonaggravating factor may be relevant to the likelihood of the defendant's commission of similar offenses in the future).

¶ 37   Finally, we note the trial court's statement, "I'm not double enhancing anything. My point is simply that this is a serious matter." We presume the trial court based its sentence on proper legal reasoning. See *Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The defendant has the burden "to affirmatively establish that the sentence was based on improper considerations." *Dowding*, 388 Ill. App. 3d at 943. Defendant has not met that burden here, and we find no error.

¶ 38   Defendant also takes issue with the following statement made by the trial court at the sentencing hearing:

> "This is a pretty big sale, a pretty big amount of drugs. Probably happens all the time in other communities. Not in this one. I mean, I don't very often see 33 grams of cocaine. I don't often see deliveries that are in excess of three grams. So it's a, relatively speaking this is a very, you know, you went from using drugs to off the charts in terms of what you are doing by selling."

Defendant argues the court's statement that Livingston County does not often see cases involving 33 grams of cocaine demonstrates the court improperly based defendant's sentence on its own personal beliefs. A sentence based on the trial court's personal beliefs is an abuse of discretion that may warrant remand. See *People v. Miller*, 2014 IL App (2d) 120873, ¶ 36, 9 N.E.3d 1210. It is the burden of the defendant to overcome the presumption the trial court relied on competent and reliable evidence. *People v. Griffith*, 158 Ill. 2d 476, 497, 634 N.E.2d 1069, 1079 (1994).

¶ 39    In this case, we find defendant has failed to overcome this presumption, and we find no error. The trial court's comment needs to be considered in conjunction with the arguments of counsel. The State noted the "unusually large quantity" of cocaine defendant had in his possession, clearly intended for sale, and defense counsel, at the very outset of his argument, commented on how the State painted "a true picture of where [defendant] was at the time of his arrest." The trial court's reference to the relative amount of cocaine in Livingston County, when taken in context, was not error. Defendant does not present anything in the court's statement that indicates the court considered the relative amount of cocaine as an aggravating factor, as opposed to merely commenting on the nature of the offense

¶ 40    Even if the trial court had improperly considered factors inherent in the offense or personal beliefs, we find remand is not required. Here, the court discussed several aggravating factors—defendant's criminal history, the need to deter others, and defendant's status on felony probation at the time of the instant offenses. See *People v. Scott*, 2015 IL App (4th) 130222, ¶ 55, 25 N.E.3d 1257 (finding the trial court's consideration of a number of aggravating factors supported the conclusion that remand was unnecessary). Defendant argues the trial court's consideration was not "insignificant" where defendant was sentenced to 14 years above the

minimum available sentence. This is somewhat at odds with defendant's earlier argument that a sentence "in the middle" of the sentencing range was appropriate. Defendant's sentence was also 10 years below the maximum sentence. In light of defendant's prior criminal history, coupled with the fact he was on felony probation for one offense and misdemeanor probation for another at the time of this offense, a middle-range sentence hardly leads us to infer a reasonable probability exists that his sentence might have been less had the trial court refrained from mentioning the alleged improper factors. The record does not indicate the court's statements resulted in a sentence greater than that which would have been imposed. Accordingly, we do not find the trial court's statements constituted plain error on the facts of this case.

¶ 41                                    III. CONCLUSION

¶ 42            For the reasons stated, we affirm the trial court's judgment.

¶ 43            Affirmed.